Good morning, Your Honors. May it please the Court, James McCurdy representing Petitioner-Employer Joan Stevedoring. We're here today on what is a protracted record. At first, this is a hearing loss claim. Am I right that there's $20,000 at stake here? Excuse me, Your Honor? How much money is at stake in this case? I don't know the exact figure. I didn't, as some of the prior counsel stated, I didn't have the privilege of representing the employer at the hearing. Yeah, but you counted. I counted about $20,000. That would seem to be about accurate, Your Honor. Do you think that anybody tried to mediate this case? Excuse me, Your Honor? We tried to use our mediators with regard to this case. I believe that the issues at this case were such that neither party believed that they had any media issues that could be properly mediated, Your Honor. So, no, I don't believe this case has. And Respondent's counsel may be able to correct me on that, Your Honor. But I don't believe there's been any mediation. Go ahead. As I stated, this case was, comes from a hearing loss from Klayment, who retired from Jones-Stevedore in 1983 and exhibited no hearing loss until later in 2001. He went in for an audiogram in 2006, and that showed some hearing loss. The case was presented to the OALJ, who, upon hearing, found that plaintiff or, excuse me, Klayment had met his initial burden under the 20A, and that put the presumption of a compensable claim into the case. The OALJ further found that after that presumption had been found, that employer presented sufficient evidence to rebut the presumption, and then the OALJ properly went to the third step of that process, which was to weigh the evidence or engage in a determination of whether or not there was sufficient evidence for an ultimate conclusion that the case was compensable or that the hearing loss was compensable. The OALJ, in that first opinion in order from April of 2008, determined that the hearing loss was not compensable and that there was not evidence that, to a preponderance of the evidence, that would support a finding that the case was compensable or that the hearing loss was compensable, and denied the claim. The case then went up to the Board of Benefits, the Benefits Review Board, who ultimately determined that the OALJ did not have sufficient evidence to reverse, that there was not the decision. We actually know what happened. We've read the record. Please argue your case. Thank you, Your Honor. We have raised two points on appeal. The first is that the Benefits Review Board has exceeded their scope of review on this case. Now, in order to get the Benefits Review Board to reverse an opinion of an administrative law judge, they have to meet one of three criteria. Either the decision, the OALJ's decision has to be contrary to law. It has to be irrational or it has to be unsupported by substantial evidence. And they said basically the first, right? Excuse me, Your Honor? Their ruling was the first. That it was contrary to law, yes, Your Honor. They said that there was not substantial evidence on the record to support the OALJ's determination that there was not a compensable injury. And they phrased that as a legal question about the legal weight to be given to the presumption under 28. They did, Your Honor. But when reading the Benefit Review Board's decision, and I'm talking about the first decision, the one we're appealing from 2009, when the Court, when we review that decision or that opinion in order, when you look at it, what we would argue that the Benefits Review Board is doing is essentially reweighing the evidence that the That's, I mean, to me that was a very gray line in this case. I mean, is it really a legal issue or is it really a factual issue? And I don't know of any clear way to answer that question. Well, Your Honor, we would agree that it is a close question. But if you look at the administrative law judge's opinion in order, the first go-around in 2008, the judge spends over 20 pages outlining all the evidence that's presented. But in a way, but he made certain rulings about which evidence he was giving weight to and which he wasn't. And the Board didn't take issue with any of that. I mean, he gave evidence to the coworker, gave weight to certain purposes and not for other purposes, and he gave weight to his doctor for certain purposes, but not other purposes. And none of that was questioned either directly or subtly, as far as I could tell, by the Board. Your Honor, I appreciate that interpretation, but we would, I would disagree with Your Honor's reading of the Benefit Review Board's analysis of that. Well, Your Honor, I would look at, first I would take issue or take exception with the opinion at excerpt of record, page 22, and there the Benefits Review Board looks at three of the doctor's testimonies, all of whom said we can't say to a reasonable degree of medical probability that there was any evidence that claimant sustained an injury at, while working for an employer. And the Benefits Review Board says that based on that, and they're using, I think, a triple negative here, but they say that, essentially, this evidence cannot be relied upon as substantial evidence because no one can say that there was a, there's a relationship to the work claimant did for employer. There's no relationship between that work and his hearing loss. And that's what you were ruling. You're saying what you were, what the evidence needs to show is not that it, not that it was, there was a causal relationship, but that there wasn't one. Right? That's what they're saying. So, therefore, all this evidence where people said I can't say that there was one doesn't work because the question is there's no evidence that says I can say with medical certainty that there wasn't one. So if there's a legal ruling about what's required to get over the prima facie case, it's either right or it's wrong, but it's a legal ruling. Well, Your Honor, we would say that in addition to taking these doctors' testimony out of context, what the Benefits Review Board was, did was to take each individual aspect of testimony and say why they thought that couldn't be substantial evidence. And our reading, or my reading of the ALJ's opinion, is to take numerous aspects. What did they have to demonstrate? What did all of it together have to demonstrate? Your Honor, on the second aspect of the test? Yes. They would have to show that the employer had to come forth and meet the burden of showing substantial evidence that the employment wasn't related, that the hearing loss wasn't related to employment. But as I understand the appropriate standard, it's not substantial evidence. It's substantial countervailing evidence. That's what it says in Ramey. Well, Your Honor, the standard that we believe in. And that's what it also says in Hawaii, Steve Adores v. Agawawa. I believe what those cases also say, Your Honor, is that that's substantial evidence. Well, it's substantial countervailing evidence. Well, it's substantial evidence that's specific and comprehensive enough, and I think this is the specific standard, specific and comprehensive enough to sever a connection. Okay. So what evidence is there? You have these doctors that say, I can't say that this caused it. Do you have any doctors who say, I can't say it didn't cause it? I can't say that it didn't cause it? No one can say. No one can say that. No, Your Honor. No one can say that. It's all proven by the negative. No one can say that it was related to his employment. But that's the whole thing. I gather that that's the entire problem, because what they have to demonstrate is that it didn't cause it, not that it no. That the employer has to prove that it did not cause? Yes. The presumption carries the day unless the employer can disprove it, doesn't it? The presumption carries the day until the employer is able to burst the bubble by showing that there's substantial evidence. And as I was saying, that's countervailing evidence, not just evidence. It's got to be something that's countervailing. And then it's not enough to talk about credibility, as I understand the law, as I understand the standard. You can't go to who's more credible than not, but you've got to have at least some evidence of countervailing. Your Honor, I would take exception with the Court's analysis of how the 28 presumption is played out insofar as the weighing or the credibility. And I quote, employer must rebut the presumption by presenting substantial countervailing evidence that is specific and comprehensive enough to sever the potential connection between the disability and the work environment. Says C. Also Rainey, 134 F. 3rd. So I'm looking, then, as the Board, as a matter of law, not as a matter of fact. So I haven't got to give any deference, if you will, to what the ALJ does. I make another determination, because it's one of law. And at that point, I'm looking for substantial countervailing evidence. And if, in fact, there's no countervailing evidence, just that one can't say one way or another, then I don't know why the Board was wrong. Well, Your Honor, I would suggest that at this second stage of the analysis, and I think the ALJ pointed this out in his opinion, in where at the second stage of the analysis, it's not a the burden isn't such that it's a preponderance of the evidence. It's the same, it's a similar standard that the employee, that the claimant has to. The question is, and I think I'm saying the same thing that Judge Smith is and probably as Judge Evell, what evidence, any evidence, is there that this was not the reason, as opposed to that it wasn't just the reason? What evidence is there that there was not a causal relationship? Is the Court asking what evidence the employer put up on the rebuttal? Yes. Right. That it was not the reason. Well, the employer put up evidence that suggested that it could have been related to the case. It could have been. So what evidence is there that it wasn't the reason? Your Honor, I don't believe there is any evidence that it was. But that's the end of the case. Well, Your Honor, but the standard that the courts apply after Greenwich is not a rule-out standard. And that's, I think, what the BRB, the Benefits Review Board, did here. But because it's not my understanding of the rule-out standard was that it had to be that that was a level of evidence question, i.e., how strong did the evidence have to be that it wasn't the reason. But I want to know if there was any evidence that it wasn't the reason. There's no evidence in the record to say that the employers, that the court claim it did for employer. Isn't that what our cases say you have to have evidence of? No, I don't believe that is, Your Honor. Is that a legal question? In other words, you're standing up here to tell us it's a factual question. Is it at least a legal question whether that's sufficient, i.e., whether your burden is to show some evidence that it wasn't the reason? That's a legal question. Yes. I believe that's – I would agree with the Court on that, Your Honor. But I don't believe that that was the basis of the Benefits Review Board's analysis. And I don't believe that that is how they or the reason why they overruled the – Why don't you think that was the basis of the Benefits Review Board decision? I'm sorry, Your Honor? Why do you think the Benefits Review Board was not ruling as a matter of law that there was no evidence? Because in reading the Benefits Review Board's opinion in order from 2009, they went through the evidence and re-evaluated it. They essentially, in our opinion, said that – But isn't that what you always do when you rule on any case, not just in this situation, but in any case where you rule – when the Court is ruling as a matter of law, whether something is entitled to go to the jury or it raises a factual dispute or not, don't they have to go through the evidence? And then they say, it's my legal ruling that there's no evidence on this, so take it away from the jury or I'll grant summary judgment or something else. I believe in some circumstances that is the case. But I believe in this case, the Court went further than that. The Court went and said, okay, the administrative law judge determined that doctor – one of the doctor's testimony was admissible for some purposes, but not for other purposes, and so rejected that testimony. And then I believe the Benefits Review Board went back. Well, I asked you to show me where that happened. Would you show me where that happened? And again, Your Honor, I would say that on the excerpt of record at 22, in that portion of the opinion, it was – I believe it was Dr. Langham's opinion that was rejected by the administrative law judge Albright. Right. And here, the Board didn't rely on Dr. Langham either. They just said that he didn't – they relied on what he didn't say. He didn't say within a reasonable degree of medical certainty that noise exposure experienced did not cause aggravated contribution to the hearing loss. So they didn't rely on him. They only relied on the fact that he didn't say it. That's correct, Your Honor. But what we would say is that when taken as a whole, the Benefits Review Board did not apply all – or stepped into the shoes not only with Dr. Langham's testimony, but with Wife's testimony, we believe, with Mr. – I believe it was Becker's testimony, the coworker who testified as to some of the work that was done for an employer that the administrative law judge rejected out of hand. And we would say that the – by doing that, in so doing, the Benefits Review Board stepped into the shoes of the AOJ, usurped the AOJ's responsibility as a finer effect in this case, and replaced their own analysis of the evidence with the administrative law judge's. How often – what kind of authority do you have for how often courts reverse the board for second-guessing the factual findings of the AOJ? Well, I know that the – that this Court did it in Hawaii-Stevadorians. They didn't – the ultimate conclusion was not a reversal, but they did disagree with the Benefits Review Board's analysis of the evidence in this with regards to the 28 presumption. I – and I don't, Your Honor, to answer your question, I don't have a list of cases in front of me that would answer that directly. And if you – well, your time's nearly gone. I was going to say, if you look at Hawaii, the Hawaii case, there was definitely conflicting, countervailing evidence submitted by the employer. That's what the Court found. There was countervailing evidence, and they said that the – if you will, the board's weighing of credibility was improper, and that they shouldn't weigh credibility. And therefore, if there is countervailing evidence, we're going to do what we need to do here. And they said there was countervailing evidence, and then went to step three. And that's why I've been concentrating with you on what is the countervailing evidence here, because I tried to compare it to Agawa. And we would suggest, Your Honor, that it's – as we've pointed out, or as was discussed below, that it's negative evidence. We don't have a doctor, as Your Honor pointed out, we don't have a doctor who can come in and say, no, this isn't related to the employment. What we do have is a claimant whose testimony is unsubstantiated, a claimant's wife whose testimony was called highly into question, a multitude of others. That all made it presumptive. That all got them the presumption. All that testimony got them the presumption. And you had to come forward with something countervailing. I understand that. Kagan. Kagan. And you weren't contesting the prima facie case. You could have come in and said – and you're not now. You could have come in and said, you know, this is such crummy evidence with regard to the fact that he was even exposed to the noise, that there shouldn't be a prima facie case. But you've never argued that. That's correct, Your Honor. We did not brief that argument. All right. Thank you very much. We'll give you a minute in rebuttal. Thank you. May it please the Court. I'm Annie Peters from the law office of William Hochberg. For the Respondent, Jones-Stibidor failed to submit – Why didn't I have any attempt to say this is a $20,000 case after which the fees are obviously way over that? The parties did engage in the Court's mediation services. Jones was unable or unwilling to reconsider its position, Your Honor. All right. Go ahead. Jones-Stibidor failed to submit specific and comprehensive evidence severing the connection between Mr. Paglia's hearing loss and his working environment. The Board correctly evaluated this legal standard de novo and reversed the The specific and comprehensive standard requires that Jones clearly set forth through the introduction of admissible countervailing evidence that occupational noise did not affect the worker. There are three distinctly – It was pretty obvious that we knew all that, right, from the earlier questions. And reading something is really not a good idea. Do you have anything to add to what you heard before? Really, the Court has talked about many of the points that I was going to make. The main point that I didn't hear the Court ask about was the adherence to the requirements of the Longshore Act. One of, I believe, our strong arguments is that Jones is now requiring the claimant to file claims earlier than was previously required of claimants in order to meet – in order to meet what I believe Jones is saying is the presumptive prima facie case, but also the employer – I mean, the prima facie case seemed pretty flimsy, but they never attacked that. So that's not what they're doing. Well, they're then saying in the negative they can present the delay by the claimant in – as negative evidence to overcome the presumption. Well, AGAWA did suggest that that was a pretty good evidence. AGAWA said the first part of the evidence the Court used in AGAWA for suggesting there was countervailing evidence was AGAWA's delay in reporting. But that was only one part of the evidence. I understand, but it was one part. It was one, but in AGAWA there was specific evidence showing that there was not stressful environment. I understand that, but I'm just saying we can't get too heavy on the delay, because the delay is one part of the evidence they could present. The U.S. Supreme Court has also dealt with delay, however, in hearing loss cases under the Longshore Act. They have specifically said that one can – simply cannot say that a person suffering from deafness is not deaf, whether or not he notices how deaf they are or not, yet the Administrative Law Judge did not even consider that case in making his ruling. Also the Board correctly reviewed the Administrative Law Judge's decision de novo – I mean, it is a little bizarre, sure. I mean, here you have a 93-year-old man who is a little deaf, not even that deaf, and has no evidence that he was deaf at the time he was working for these people. So it's a pretty – but to me all that goes primarily to the prima facie case. Well, the Act does not require that the claimant show that he's deaf at the time that he retires. The Act merely shows that there's a harm, that he is deaf, and that there were conditions that could have caused that harm. Even on a delayed basis? And that's one question I had, by the way. I mean, is it necessary to show or do we just accept that deafness can show up years after the facts, or the fact that you don't notice it for – that you were exposed to noise and that you're now deaf is enough without showing that you were deaf at the relevant time? The experts in this case, particularly even the employer's expert, an audiologist by the name of Dr. Wooth, addressed that and said it's not uncommon for a worker to work past the deafness or not notice the deafness. That's not quite the question, though. The question is, was there evidence that there could be a delayed result of an earlier trauma? Not that you didn't notice it. Because not noticing it suggests that there was no delay, that the deafness occurred immediately. You just didn't notice it until later. The question that Judge Berzon asked, which I was curious about, is whether there was evidence that you could have the insult to the hearing, the silly and the drums, and a delayed response later. No, Your Honor. Medically, the evidence would support that in occupational and noise hearing loss cases, the noise – or the hearing loss, the damage to the ears, occurs simultaneously with the exposure. Like sunburn and skin cancer. No, it is not. It's not an occupational disease in that way, and that was what was found originally by the U.S. Supreme Court in Bath. Nonetheless, the U.S. Supreme Court also said that the fact that you don't notice this until years later and don't bring it up until years later is not a problem. Correct, Your Honor. That's really because you get damage, whether it's damage then or aggravation or when. You become totally responsible, correct? That is correct, Your Honor. Jones basically – Jones has failed to address Mr. Paglia's prima facie case. He used negative and speculative evidence, not severing the causal relationship between the harm and work. And did not follow the statutory provisions regarding hearing loss claims. This Court should, therefore, affirm the Board's decision. If you have no further questions, I will cede the rest of my time. Any response? That's fine. Thank you very much. The case of Jones-Gibidoring Company v. Paglia is submitted, and we are – the Court is a – If I could have a moment. Counsel, I think my colleague was pretty astute in suggesting that this is not a big case. I mean, this is not the normal big case. You've got to have $75,000 usually to get to federal court. And we got $20,000 between these two parties. And if really your client was the reason this hasn't mediated or attempted mediation, I'm wondering why it is you don't go back to your client or at least make some tough determinations based on the questions today at least to see if you can't get rid of this case. I mean, I'm just saying – I'm just trying to help you understand that the questions I think are based on the best we can do with what we have in front of us. And we're certainly not making any ruling by the questions. But if it was really simply because your client said, we're so good on this case that we're going to win, then I think you ought to go back maybe and talk to them about that. Well, I appreciate the Court's insights, and I don't think that our analysis was so narrowly focused, but I appreciate the Court's input. Thank you. Thank you. Thank you very much. Thank you.
judges: Ebel, Berzon, Smith